170-13

STATE OF MAINE
PISCATAQUIS, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. DOVSC-RE-11-42

EASTBROOK TIMBER CO., INC.
&
SCHOODIC FORESTRY, LLC,
         Plaintiffs

**FINDINGS OF FACT,
CONCLUSIONS OF LAW,
AND AMENDED ORDER**

v.

BENJAMIN E. RICH
&
BRENDA C. RICH,
         Defendants

Defendants filed a Motion for Findings of Fact and Conclusions of Law in response to this Court's December 26, 2012 Order. The following numbered paragraphs address Defendants' requests in seriatim. In addition, an Amended Order follows these responses and supersedes this Court's December 26, 2012 Order.

1.) The Court is not able to make a finding on this hypothetical question because Defendants always maintained that the costs of improvements were a necessary part of the sum owed for redemption.

2.) The Plaintiffs did not tender or offer the amount owed, excluding the costs for improvements, within the redemption period.



Received & Filed
MAR 13 2013
Piscataquis County
Clerk's Office

1

3.) The rights and remedies of parties seeking an action in redemption for property sold by levy of execution are the same as the rights and remedies of mortgagors and mortgagees. 14 M.R.S. § 2251. The Court has equitable power in actions for foreclosure. *Farm Credit v. Sandstrom*, 634 A.2d 961, 962. The Court has broad discretion in the exercise of its equitable powers. *Id.*

The Defendants ask: "[w]hat is the legal authority for requiring Defendants who are out of state residents to "appear at the closing" in Bangor Maine to assist Plaintiffs in their attempts to finance the redemption amount." The Court acknowledges that its Order could cause the Defendants to travel to Bangor or incur expense that they would not incur if Plaintiffs did not obtain a secured loan, but such expense or inconvenience would be difficult to avoid in consummating any $555,000 real estate transaction. The Court is altering the wording of the Order slightly to make the following clear for both Plaintiffs and Defendants: Defendants only need to cooperate in a legal process, which may involve a third party who provides the amount necessary for redemption secured by the property being redeemed, once the Plaintiffs have demonstrated their willingness and ability to pay the amount necessary for redemption. Defendants are not required to "assist Plaintiffs in their attempts to finance the redemption amount," but are only required to engage in commercially reasonable activity incidental to the redemption process. Ruling otherwise would give the Defendants veto power over the method of the financing chosen by Plaintiffs. In light of the fact that sheriffs' sales take place to enforce the payment of debts owed by debtors, such as these Plaintiffs, it would be the unusual debtor who would have the cash necessary to redeem the property sold. Logic dictates that it would be common for parties in the position of the Plaintiffs to obtain the funds necessary for

2

redemption through a loan secured by the property being redeemed. This result is also consistent with the general proposition that statutes should be liberally construed to facilitate the redemption of mortgages. *See Cushing v. Ayer*, 25 Me. 383, 388 (1845).

4.)    Defendants rendered a false accounting and that false accounting was the basis for Plaintiffs' successful redemption action. The effect of the closing costs and expenses referenced by Defendants do not sufficiently distinguish the present case such that the accounting rendered by Defendants was in compliance with 14 M.R.S. § 6301. In addition, neither the opinion in *Ayer* nor *Dinsmore* includes a finding that the redeeming plaintiff was ready, willing, and able to pay the amount later found equitably due by the Court.

The hypothetical ability and willingness of a redeeming party to pay the sum found equitably due by the Court, which Defendants reference throughout their Motion, is not an element necessary for redemption or even a useful consideration when the mortgagee renders a false accounting. The *Ayer* Court explains this point, despite Defendants' claim that the redeeming party in *Ayer* was ready, willing, and able to pay the amount that the Court later determined owed. In *Ayer*, the defendant-mortgagee Ayer rendered a false accounting that included both the true amount owed as well as an unwarranted earlier amount he had paid to discharge a secondary mortgage. *Cushing v. Ayer*, 25 Me. 383, 388 (1845). Ayer, not unlike the Defendants in this case, argued, "he had furnished the data by which they [the redeeming plaintiff] might be enabled to make a tender understandingly, if they were disposed to make one." *Id.* The redeeming plaintiff's hypothetical willingness to pay, however, did not matter because the false

3

accounting was "virtually a denial of the plaintiff's right to redeem" and tender of the amount later found due by the Court would have been a "useless ceremony" when the defendant-mortgagee made it clear that he wanted payment of the amount actually due as well as the secondary mortgage amount. *Id.*

Defendants always maintained that they were owed both the sum found equitably due by this Court and the costs of improvements that were not owed for redemption. This was a false accounting. Plaintiff's unwarranted demand that Defendants pay taxes incidental to the redemption does not transform Defendants' false accounting into a true accounting and the hypothetical question of what Plaintiffs *might* have done if a true accounting was made is not an element of an action for redemption.

5.)     An action for redemption does not require the redeeming party to prove their willingness or ability to pay the amount necessary for redemption. For the sake of clarity, the Court cites in full to *Dinsmore v. Savage*:

> To support a bill in equity to redeem real estate under mortgage, without first making a tender of the amount due upon the mortgage, the plaintiff must aver and prove that he has been prevented from making the tender by the default of the defendant. This default may consist in refusing or neglecting to render an account of the sum due upon the mortgage, when requested so to do; or in rendering a false account. But when the defendant is guilty of neither, and has in no other way, by his default, prevented the plaintiff from performing or tendering performance of the conditions of the mortgage, a suit against him to redeem cannot be maintained.

68. Me. 191, 193 (1878). The Court also redirects Defendants to its discussion of this issue in the preceding paragraph.

4

Accordingly, the Court AMENDS its prior Order and ORDERS as follows:

Judgment shall be entered for Plaintiffs on Count I in their equitable action for redemption. Once the Plaintiffs have demonstrated their willingness and ability to pay the amount necessary for redemption, then the Defendants shall make reasonable effort to cooperate with the Plaintiffs in the closing process, including cooperation with a financing entity, if the closing transaction is financed through a third party who takes a security interest in the property being redeemed. Defendants are not, however, required to bear any of the costs discussed in this Court's December 26, 2012 Decision, or engage in any act that could reasonably be perceived to jeopardize their title to the property being redeemed prior to redemption. On the day of redemption, the Defendants shall be paid $555,000, the cost they paid at the sheriff's sale for the Schoodic Lake property without any reductions due to taxes or costs. Plaintiffs shall have 90 days from the date of this Order to redeem the property.

Judgment shall be entered for the Defendants on Plaintiff's Count II.

The Clerk shall incorporate this Order into the docket by reference.

March 12, 2013

William R. Anderson
Justice, Superior Court

5